IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AMCO INSURANCE COMPANY, )
as Subrogee of Star Hotels, Inc., )
 )
        Plaintiff, )
 )
        vs. )    2:09cv904
 )    **Electronic Filing**
EMERY & ASSOCIATES, INC., )
PREMIER HOSPITALITY GROUP- )
KITTANNING, L.P., GENERAL )
HOSPITALITY, INC., and )
KRATSA CORPORATION, )
 )
        Defendant. )

## MEMORANDUM OPINION

February 20, 2013

**I.   INTRODUCTION**

Plaintiff, AMCO Insurance Company ("AMCO") filed this action as Subrogee of its insured Star Hotels, Inc. ("Star Hotels"), against Defendants, Emery & Associates, Inc. ("Emery"), Premier Hospitality Group-Kittanning, L.P. ("Premier"), General Hospitality, Inc. ("General") and Kratsa Corporation ("Kratsa")(collectively "Defendants"), to recover monies paid as a result of a fire at Star Hotels' Comfort Inn (the "Comfort Inn" or the "hotel") located in East Franklin Township, Armstrong County, Pennsylvania. In a four (4) count complaint, AMCO asserts the following claims against the Defendants: (1) Negligence *Per Se* (Count I); (2) Negligence (Count II); (3) Breach of Contract (Count III); and (4) Breach of Warranty (Count IV). Emery has filed a motion for summary judgment, and Premier, General and Kratsa

1

(hereinafter referred to as the "Kratsa Defendants") have also filed a motion for summary judgment. AMCO has responded and the motions are now before the Court.

**II.   STATEMENT OF THE CASE**

In December of 1994, Premier, General and/or Kratsa purchased the property known as 13 Hilltop Plaza, East Franklin Township, Armstrong Count, Pennsylvania, with the purpose of developing, constructing and operating a hotel. Emery Concise Statement of Material Facts ("Emery CSMF") ¶ 6; AMCO Concise Statement of Material Facts ("AMCO CSMF") ¶ 6. Emery was retained to act as the general contractor for the construction of the Comfort Inn. Emery CSMF ¶ 7; AMCO CSMF ¶ 7. Architectural Alliance prepared a set of plans for the hotel, identifying it as Project #94105, and such plans were approved by the Commonwealth of Pennsylvania Department of Labor and Industry ("Pa. L & I") on or about December 28, 1994. Court's Memorandum Opinion July 2, 2012 ("Memo Op.") p. 3.  The hotel was completed in January, 1996, and an Occupancy Certificate was issued by Pa. L & I on January 12, 1996. *Id*.; Emery CSMF ¶¶ 9 & 12; AMCO CSMF ¶¶ 9 & 12.

On or about January 4, 2001, the Comfort Inn was purchased from Premier, General and/or Kratsa by an entity known as Midmark Star Properties, Inc., which was grouped together with several other hotels owned by the same individuals, and for both convenience and insurance purposes, was referred to collectively as Star Hotels, Inc.  Emery CSMF¶ 15; Patel Depo. pp. 6-8; AMCO CSMF ¶ 15.  The property was insured by Star with AMCO. Memo Op. p. 3.  On December 13, 2008, a fire occurred at the Comfort Inn causing extensive damage. Complaint ¶ 12.   Based on the claims made under Star's insurance policy, AMCO made payments totaling $4,389,883.00.  Memo Op. p. 3.

The Pa. L & I approved the architectural drawings for the Comfort Inn as being in compliance with the Pennsylvania Fire and Panic Act. Kratsa CSMF ¶¶ 7 & 8; AMCO CSMF ¶¶ 7 & 8. AMCO, however, alleges that in constructing the hotel, Emery violated the Pennsylvania Fire and Panic Act, certain provisions of the Pennsylvania Code which required draftstopping (vertical firewalls) and an automatic fire sprinkler system, and provisions of the East Franklin Township Building Code. Complaint ¶ 19.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See*

3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

**IV.   DISCUSSION**

   A.   Negligence *Per Se*

In their motions for summary judgment, Defendants argue that AAMCO's claim based upon negligence *per se* must be dismissed as a matter of law. In its Memorandum Opinion and Order dated July 2, 2012, this Court found that the alleged violations of the Fire and Panic Act and/or local building codes did do not establish negligence *per se* and dismissed Count I of AMCO's complaint. Therefore, there is no need to address negligence *per se* in this Opinion.

   B.   Negligence

In Count II of its complaint, AMCO asserts a common law claim of negligence against all Defendants. AMCO contends that the Defendants were negligent in failing to comply with the Pennsylvania Fire and Panic Act (the "FPA"), the 1993 BOCA National Building Code, and the plans approved by Pa. L & I. Specifically, AMCO contends Defendants: (1) used oriented strand

board ("OSB") instead of fire retardant treated ("FRT") wood for structural members as required by the 1993 BOCA Code and the FPA; (2) failed to provide an automatic sprinkler system or fire detectors in the attic; (3) exceeded maximum spacing for draftstops; and (4) failed to build in accordance with the approved plans.

1. The Kratsa Defendants

The Kratsa Defendants argue that AMCO's negligence claim must be dismissed as a matter of law because the tort based claims are extinguished by the existence of a contract for the sale of the hotel between AMCO's subrogor and the Kratsa Defendants which defines the duties, if any, owed between the parties.

Pennsylvania courts use two methods to determine whether tort claims that accompany contract claims should be allowed as freestanding causes of action or rejected as illegitimate attempts to procure additional damages for a breach of contract: the "gist of the action" test and the "economic loss doctrine" test. *Bohler-Uddeholm American, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 103 (3rd Cir. 2001), *cert. denied, Ellwood City Forge Co. v. Bohler-Uddeholm America Inc.*, 534 U.S. 1162 (2002).

The economic loss doctrine is designed to place a check on limitless liability for manufacturers and establish clear boundaries between tort and contract law. *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680-681 (3rd Cir. 2002). In Pennsylvania, the economic loss doctrine precludes recovery for economic losses in a negligence action where the plaintiff has suffered no physical injury or property damage. *Aikens v. Baltimore & Ohio R.R. Co.*, 501 A.2d 277, 279 (Pa. Super.1985) (no cause of action lies for negligence that causes only economic loss); *Rock v. Voshell*, 397 F. Supp.2d 616, 627-28 (E.D. Pa. 2005) (applying Pennsylvania law, economic loss doctrine bars negligence and negligence *per se* causes of action); *Eagle Traffic Control v. Addco*,

5

882 F. Supp. 417, 419 (E.D. Pa.1995) (applying Pennsylvania law, economic loss doctrine applies to claims of negligent misrepresentation). In the instant matter, AMCO is seeking damages for AMCO property damage, and not for purely economic loss. Therefore, the economic loss doctrine is not applicable here.

Under the "gist of the action" test,

> to be construed as a tort action, the [tortious] wrong ascribed to the defendant must be the gist of the action with the contract being collateral. . . . The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus.

*Bohler-Uddeholm American, Inc. v. Ellwood Group, Inc.*, 247 F.3d at 104. The gist of the action doctrine exists, therefore, "to maintain the conceptual distinction between breach of contract claims and tort claims." *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002). A plaintiff may not through artful pleading attempt to frame a breach of contract claim as a tort claim. *See Clark Motor Co. v. Mfrs. & Traders Trust Co.*, 360 Fed. Appx. 340, 347 (3d Cir. 2010).

In *eToll*, the court explained that the gist of the action doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract. *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d at 19.

In its Complaint, AMCO avers that "[o]n or about January 4, 2001, defendants Premier, General and/or Kratsa, and each of them, sold the aforesaid [Comfort Inn] hotel to [AMCO's] insured Star Hotels, Inc." Complaint ¶ 11. At Count II of its Complaint, AMCO alleges

6

negligence based upon, *inter alia*, Defendants': (1) failure to follow architectural plans; (2) failure to provide automatic sprinkler system and/or draftstopping as indicated on the architectural plans and/or as required by applicable laws, statutes, codes, regulations and industry standards; (3) failure to follow applicable laws, statutes, codes, regulations and industry standards; and (4) failure to properly select, train and/or supervise its employees and/or employees of its contractors and subcontractors. *See* Complaint ¶¶ 21(c) through 21(h)[1]. AMCO further averred that such conduct was a breach of the written and/or oral contracts and agreements of which AMCO's insured was a direct and/or third-party beneficiary.

The Kratsa Defendants argue that its relationship with AMCO's insured arose out of the contract for the sale of the hotel, and that any duties created and breached, and any liability arising therefrom, are grounded in the contractual relationship. Therefore, under the gist of action doctrine, the tort claims must be dismissed.

AMCO contends that this Court must not ignore the alleged unlawful activities of the Kratsa Defendants which occurred prior to the issuance of the Certificate of Occupancy, and simply view them as the sellers of the hotel. AMCO advocates a dual role for the Kratsa Defendants. In 1994, the Kratsa Defendants were acting as developers of the hotel property and owed a duty of care to foreseeable victims of any breach of that duty. In Kratsa's other role, that of seller of the hotel six years after construction, AMCO contends there was a contractual relationship that warrants liability under contract for the same conduct that created liability in tort. AMCO further argues that, under Pennsylvania law: (1) a property damage plaintiff may sue a developer in tort for code violations, *Friedman v. Bar Development Co.*, Civil Action No. 6172 (March 13, 2006, Westmoreland Cty Court of Common Pleas 2004); (2) a personal injury

---

[1] AMCO concedes that it has not pursued its negligence claims based upon the installation of the bathroom fan/light fixtures set forth at Paragraphs 21(b), (c), (d) and (i) of the Complaint, and such claims shall be dismissed.

7

plaintiff may sue a former owner in tort for defects in construction, *Riccio v. S&T Contractors*, 56 Pa. D. & C.4th 86 (Chester Cty. Court of Common Pleas 2001) and *Leach v. Pennsylvania Savings Fund Society*, 340 A.2d 491 (Pa. Super. 1975): and (3) a property damage plaintiff who was not a tenant of a building that violated fire codes could maintain a negligence *per se* action against the owner, *In re One Meridian Plaza Fire Litigation*, 820 F. Supp. 1460 (E. D. Pa. 1993), *reversed on other grounds sub nom. Federal Ins. Co. v. Richard I. Rubin & Co., Inc.*, 12 F.3d 1270 (3rd Cir. (Pa.) 1993), *cert. denied sub nom. Ejay Travel, Inc. v. Algemeen Burgerlijk Pensioenfonds*, 511 U.S. 1107 (1994).

None of the cases cited by AMCO, however, support a finding of tort liability in this instance. *Riccio*[2] and *Leach* were cases involving personal injury to a plaintiff unrelated to the owner of the property. Similarly, the court in *Friedman* addresses the statute of repose and makes no mention of a contractual relationship between the parties. Further, *One Meridian Plaza* is not applicable to the instant case. In *One Meridian Plaza*, the United States District Court for the Eastern District of Pennsylvania found that economic losses were recoverable under a public nuisance claim. The Pennsylvania Superior Court subsequently rejected the holding in *One Meridian*, finding Pennsylvania has "never recognized a private cause of action for public nuisance," however if one were to exist, "Pennsylvania's strong, oft-stated public policy of barring recovery for economic losses sustained as a result of another's tortious conduct" would result in the Pennsylvania Supreme Court most likely excluding economic losses from those damages recoverable for such a claim. *See Duquesne Light Co. v. Pennsylvania American Water Co.*, 850 A.2d 701, 704-707 n.2 (Pa. Super. 2004). The remainder of the cases

---

[2] In *Riccio*, the issue addressed by the court was whether expert testimony linking fibromyalgia and trauma should be precluded under *Daubert*. There was no mention of the gist of action doctrine as there was no contractual relationship between the party injured when a residential deck collapsed and the owner of the property.

8

cited by AMCO involve either causes of action found to be collateral to a contract, *i.e.* fraudulent inducement, breach of fiduciary duty, or are landlord-tenant cases. Such cases are inapplicable here.

This Court must reject AMCO's claim that the Kratsa Defendants have a "dual role" which warrants a finding of liability in both tort and contract for the same conduct. Clearly, the gist of action doctrine is applicable and any duty between the parties arises out of the contract for the sale of the hotel. Accordingly, summary judgment on AMCO's negligence claim will be granted in favor of the Kratsa Defendants.

        2.      <u>Emery</u>

As set forth above, AMCO contends that Emery was negligent in that it: (1) used oriented strand board ("OSB") instead of fire retardant treated ("FRT") wood for the wooden structural members as required by the 1993 BOCA Code and the FPA; (2) failed to provide an automatic sprinkler system or fire detectors in the attic; (3) exceeded maximum spacing for draftstops; and (4) failed to build in accordance with the approved plans. To establish a cause of action in common law negligence, a plaintiff must demonstrate that the defendant owed the plaintiff a duty, that the duty was breached, that the breach caused the plaintiff's injury, and that the plaintiff suffered damages. *Harris v. Merchant*, 2010 U.S. Dist. LEXIS 100776, 2010 WL 3734107, at *21 (E.D. Pa. Sept. 23, 2010) (citing *Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 980 A.2d 502, 506 (Pa. 2009)); *also see McCandless v. Edwards*, 908 A.2d 900, 903 (Pa. Super. 2006). Emery moves for summary judgment on this negligence claim, arguing that (a) it had no duty to AMCO; and (b) there is no evidence that its actions or inactions caused or otherwise affected the damages suffered by AMCO and/or its subrogor.

9

(a) <u>Duty</u>

When considering the question of duty, it is necessary to determine "whether a defendant is under any obligation for the benefit of the particular plaintiff…and, unless there is a duty upon the defendant in favor of the plaintiff which has been breached, there can be no cause of action based upon negligence." *J.E.J. v. Tri-County Big Brothers/Big Sisters*, 692 A.2d 582, 584 (Pa. Super. 1997). A duty "can arise from common law, by statute and by contract." *Emerson v. Adult Cmty. Total Servs., Inc.*, 842 F. Supp. 152, 155 (E.D. Pa. 1994) (citations omitted). The Supreme Court of Pennsylvania has recognized that:

> a party to a contract does not become liable for a breach thereof to one who is not a party thereto. However, a party to a contract by the very nature of his contractual undertaking may place himself in such a position that the law will impose upon him a duty to perform his contractual undertaking in such manner that third persons—strangers to the contract—will not be injured thereby . . . . It is not the contract per se which creates the duty; it is the law which imposes the duty because of the nature of the undertaking in the contract.

*Farabaugh v. Pa. Turnpike Comm'n*, 590 Pa. 46, 911 A.2d 1264, 1283 (Pa. 2006). Further, the question of whether a duty exists is "purely a question of law." *Brown v. Pa. Dep't of Transp.*, 11 A.3d 1054, 1056-57 (Pa. Commw. 2011).

Noting that the concept of duty, as well as the the related concept of proximate causation, are ultimately policy considerations, Chief Justice Nix stated:

> In determining the existence of a duty of care, it must be remembered that the concept of duty amounts to no more than "the sum total of those considerations of policy which led the law to say that the particular plaintiff is entitled to protection" from the harm suffered. *Leong v. Takasaki*, 55 Haw. 398, 520 P.2d 758, 764 (1974). To give it any greater mystique would unduly hamper our system of jurisprudence in adjusting to the changing times. The late Dean Prosser expressed this view as follows:

> These are shifting sands, and no fit foundation. There is a duty if
> the court says there is a duty; the law, like the Constitution, is what
> we make it. Duty is only a word with which we state our
> conclusion that there is or is not to be liability; it necessarily begs
> the essential question. When we find a duty, breach and damage,
> everything has been said. The word serves a useful purpose in
> directing attention to the obligation to be imposed upon the
> defendant, rather than the causal sequence of events; beyond that it
> serves none. In the decision whether or not there is a duty, many
> factors interplay: The hand of history, our ideas of morals and
> justice, the convenience of administration of the rule, and our
> social ideas as to where the loss should fall. In the end, the court
> will decide whether there is a duty on the basis of the mores of the
> community, "always keeping in mind the fact that we endeavor to
> make a rule in each case that will be practical and in keeping with
> the general understanding of mankind."

*Sinn v. Burd*, 404 A.2d 672, 681 (Pa. 1979).

Emery and the Kratsa Defendants originally entered into a contract for the construction of the hotel. An Occupancy Certificate was issued by Pa. L & I on January 12, 1996, and approximately five years later, AMCO's insured purchased the hotel, admittedly without inspecting the property, from the Kratsa Defendants. Despite AMCO's misguided contention its insured was a third-party beneficiary of the contract between Emery and the Kratsa Defendants, the Court finds no contractual duty owed by Emery to AMCO or its insured. Based upon this Court's analysis of AMCO's negligence *per se* claim, the Court finds no duty owed directly to AMCO's insured arising from the alleged violations of the FPA and/or local and national building codes.

A duty in this instance then must be arise from common law based upon some relation between Emery and AMCO, and/or its insured, which gives rise to the obligation of certain conduct. AMCO argues that Emery breached a common law standard of care in its failure to comply with the FPA and other building code requirements, and it was foreseeable that such breach could cause injury to a downstream purchaser of the hotel.

11

Based upon the writings of Chief Justice Nix and Dean Prosser, the most important factor to consider in determining whether to create a duty of care is social policy. Moreover, the Pennsylvania Superior Court listed the following factors, derived from the above principles, to be applied in determining the existence of a duty: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution. *F.D.P. ex. rel. S.M.P. v. Ferrara*, 804 A.2d 1221, 1231 (Pa. Super. 2002).

In applying these factors the Court finds that the factors weigh, though somewhat tenuously, in favor of finding a duty of care in constructing the hotel owed by Emery to AMCO's insured. Though there is no direct relationship between the parties, a contractor is certainly aware that a commercial building is likely to have multiple owners and negligent building practices will affect subsequent purchasers. Clearly, Emery's services provide ample social utility, however it is foreseeable that negligent construction with regard to fire code requirements could result dangerous consequences. Moreover, the public interest lies in imposing a duty on those who are negligent in following required building codes.

Considering the facts in the light most favorable to AMCO, and drawing all reasonable inferences therefrom in AMCO's favor, the Court finds that Emery owed a duty of care to AMCO. The Court must now determine if there was a breach of such duty and if there is a causal relationship between the breach and the resulting injury, or actual loss, both of which are required to establish a cause of action in negligence.

(b) Causation and Actual Injury

In a negligence action, causation is proved by "a demonstration that the breach of duty was both the proximate cause and actual cause of injury . . . ." *Eckroth v. Pa. Elec., Inc.*, 12 A.3d 422, 427 (Pa. Super. 2010). Proximate causation is defined as "a wrongful act which was a substantial factor in bringing about the plaintiff's harm." *Dudley v. USX Corp.*, 606 A.2d 916, 923 (Pa. Super. 1992). "A determination of proximate or legal causation therefore essentially regards 'whether the alleged negligence was so remote that as a matter of law, the defendant cannot be held legally responsible for the subsequent harm.'" *Eckroth v. Pa. Elec., Inc.*, 12 A.3d at 428 (quoting *Holt v. Navarro*, 2007 PA Super 243, 932 A.2d 915, 921 (Pa. Super. 2007)).

Plaintiff's harm in this instance was caused by an electrical fire originating in the attic, likely from electrical wiring associated with a bathroom ceiling light/fan fixture[3]. AMCO alleges that the failure to use fire retardant treated ("FRT") wood for roof structural members and decking, failure to provide an automatic sprinkler system or fire detectors in the attic, and inadequate draftstop spacing, contributed to fire development and the greater spread of the fire. *See* AMCO Appendix Ex. G, p. 1. Damage to the hotel consisted of: (1) water damage to the first and second levels of the structure; (2) smoke and water damage to the northernmost rooms on the third floor; (3) extensive smoke and water damage to rooms on the southern end of the third floor as well as damage related to charred insulation material, wood structural members, and roofing material that had fallen from the attic into the rooms below; and (4) extensive fire damage to the south section of the attic. *See* AMCO Appendix Ex. F-1, p. 3. AMCO must show that Emery's conduct was a substantial factor in bringing about such harm.

---

[3] The fire department had reported a previous attic fire in the hotel which occurred on July 8, 2007, and was caused by a recessed bathroom fan failure. AMCO Appendix Ex. G, p. 2.

AMCO contends that Emery failed to provide an automatic sprinkler system or fire detectors in the attic as required by the FPA. The Court, however, does not agree with AMCO's reading of the regulations. All parties agree that the hotel was a building with a C-2 occupancy class. Pursuant to the FPA, a C-2 class building required either an automatic fire alarm system or an automatic sprinkler system that protected the entire building. Section 55.52(a) of Title 34 of the Pennsylvania Code provides in relevant part:

> An automatic fire alarm system shall be provided for C-2 occupancies, except for buildings totally protected by an automatic sprinkler system. Smoke detectors shall be located in the corridors, stairs, and rooms of the building except as follows: rooms of individual apartment units, hotel or motel sleeping rooms, or dormitory rooms with sleeping accommodations for five or less persons. Heat detectors may be used in the kitchens, restrooms, boiler rooms, furnace rooms and other special rooms as approved by the Department. Other detection devices may be approved by the Department for special conditions. The automatic fire alarm system shall comply with § 50.52 (relating to automatic system). . .

34 PA. CODE §55.52(a) (emphasis added). Section 50.52 defines an automatic fire alarm system as "a system designed to detect products of combustion and provide automatic notification to all building occupants" and "shall be composed of detection devices, alarms, power source, wiring and other related components as necessary." 34 PA. CODE §50.52(a). The automatic fire alarm system's detection devices were required to "be installed to comply with the requirements of the applicable occupancy division", in this instance, C-2 occupancy. *See* 34 PA. CODE §50.52(b).

Based on the above, the hotel was required to have an automatic fire alarm system consisting of detection devices, alarms, power source, wiring and other related components which was to be installed in accordance with C-2 occupancy requirements. AMCO contends that the smoke detectors were required to be in the attic because §50.52(e)(2) provides that "[w]hen **automatic fire detection** is required, smoke detectors shall be installed in all occupied and

14

unoccupied spaces not protected with other type fire detectors or fire suppression systems." 34 PA. CODE §50.52(e)(2) (Emphasis added).

The primary goal of judicial interpretation of a statute is to ascertain and give effect to the Legislature's intent. *Holt v. Lenko*, 791 A.2d 1212, 1214 (Pa. Super. 2002). The intent of the Legislature "can only be derived by reading all sections of the statute together and in conjunction with each other and construed with reference to the entire statute." *Storms ex rel. Storms v. O'Malley*, 779 A.2d 548, 559 (Pa. Super. 2001) (quoting *Panea v. Isdaner*, 773 A.2d 782, 788 (Pa. Super.2001)). AMCO's construction of §50.52 makes §55.52(a) a nullity[4], which is contrary to the requirement that the sections be read in conjunction with each other. Section 55.52 is specific to C-2 occupancy class buildings, and requires an automatic fire alarm system with smoke alarms to be located in the corridors, stairs, and rooms of the building except in rooms of individual apartment units, hotel or motel sleeping rooms. Not only does §55.52 address an "automatic fire alarm system" as opposed to "automatic fire detection" referenced in §50.52(e)(2), but it also addresses the specific, *i.e.* corridors, stairs, rooms, rather than the general, *i.e.* occupied and unoccupied spaces. The Court finds that Emery was not in violation of the FPA by failing to provide smoke detectors and/or sprinklers in the attic of the hotel.

The Court is also not convinced that the draftstop spacing in the hotel's attic was inadequate, however, the Court is unable to find as a matter of law that the actual draftstopping was in conformance with the FPA. The draftstopping requirement alleged to have been violated provides: "[h]orizontal concealed spaces shall be provided with draftstopping each 3,000 square feet." 34 PA. CODE §50.11(d) Note 2. Plaintiff's expert, Eric R. Rosenbaum ("Rosenbaum") never visited the site of the hotel, and based his conclusions and opinions regarding the

---

[4] Such construction also ignores the clear mandate of §50.52(b).

draftstopping on a report prepared by Joey J. Wilson ("Wilson") of Unified Investigations & Sciences, Inc.

Subsequent to Wilson visiting the fire scene, Rosenbaum spoke to her about the location of the draftstopping. Rosenbaum Deposition pp. 42-43. Rosenbaum testified that Wilson indicated on a plan drawing where she remembered seeing the draftstop when she was on site. Rosenbaum Dep. pp. 44, 95-96. Rosenbaum, then measured off the scaled plan drawing and calculated that the draftstop area was "[g]reater than 3,000 square feet." Rosenbaum Dep. pp. 42-43. The draftstop located by Wilson, and the area measured by Rosenbaum, however, was not the draftstop located where the fire started, instead it was a draftstop that existed at the end of the building opposite of where the fire started. Rosenbaum Dep. pp. 95-96. Rosenbaum did not measure, either physically on site or from a scaled plan drawing, the draftstop area located where the fire actually started. Rosenbaum Dep. p. 97. In fact, Rosenbaum admitted that he did not know where the draftstop was located, or in fact if a draftstop existed, in the area where the fire started. Rosenbaum Dep. p. 99.

Further, Rosenbaum does not know how many sections of draftstopping actually existed in the hotel's attic. The interior team of firefighters accessed the attic through a ceiling hatch located in the third floor hallway. The team observed smoke in the attic and fire along the south side of the attic. The fire team reported that a draftstop was in place between their point of access into the attic and the fire's location. The interior team further reported that there were two (2) draftstops visible. *See* AMCO Appendix Ex. F-1, p. 8. Rosenbaum, however, has no idea where these two draftstops were located. Rosenbaum Dep. p. 39. Wilson also observed other draftstopping, but gave no indication where such draftstopping was located. Rosenbaum Dep. p. 43.

AMCO admits that the hotel plan drawings showed draftstops that were in compliance with the FPA. AMCO's Memorandum in Support of Motion for Partial Summary Judgment p. 6. Moreover, the hotel plans were approved by Pa. L & I with regard to the FPA, Pa. L & I performed several pre-final inspections of the construction of the hotel and Pa. L & I issued an Occupancy Certificate after a final field inspection. The only evidence that the draftstop spacing was inadequate derives from Wilson's *post hoc* location of a draftstop on a plan drawing, and Rosenbaum's measurement of the area on the plan drawing. Considering the facts in the light most favorable to AMCO, and drawing all reasonable inferences from such facts in AMCO's favor, the Court finds a question of fact exists as to whether Emery was in violation of the FPA with regard to draftstopping, and whether the draftstopping, if inadequate, was a substantial factor in bringing about AMCO's alleged harm.

AMCO also contends that Emery's failure to use FRT wood contributed to the development and spread of the fire. Emery does not contest that the roof joists and decking were not constructed of FRT wood, however, whether the use of the non-FRT wood had a causal connection to AMCO's damages is also a question of fact.

Both Wilson and Rosenbaum contend that the failure to use FRT wood and inadequate draftstopping contributed to the development and spread of the fire, but neither can quantify how the damages were affected. When specifically questioned about how the alleged violations of either BOCA or the FPA affected the damage to the hotel, Rosenbaum said he had no opinion whether there would be more damage, less damage, or the same amount of damage. Rosenbaum Dep. pp. 71-72. Both Wilson and Rosenbaum did indicate, however, that had FRT wood been used in the attic, the damages would have been limited to the area of origin instead of the fire causing devastating damage sustained.

The official cause of the fire was specified as "Electrical energy bath room 322 110 vt wire lead for fan/light." AMCO Appendix Ex. G, p. 2. The housing of the bathroom fans were located in the attic and were covered by about nine (9) inches of blown-in insulation. AMCO Appendix Ex. F-1, pp. 6-7. The fire smoldered for two-three hours before it was reported after a witness saw smoke venting from the eaves of the hotel. *Id.* The hotel suffered fire damage, smoke damage and water damage and AMCO paid its insured approximately $4 million, the amount it seeks here, to cover the damages to the hotel. If Emery failed to properly construct the draftstops and/or failed to use FRT wood where required, it is reasonable to find that such failures caused damage to AMCO's insured.

Under Pennsylvania law, a defendant is not relieved from liability because another concurring cause is also responsible for producing injury. *See, e.g., Jones v. Montefiore Hospital*, 431 A.2d 920, 923 (Pa. 1981); *Hamil v. Bashline*, 392 A.2d 1280, 1284 (Pa. 1978). Once a plaintiff has introduced evidence that a defendant's negligent act or omission increased the risk of harm to a person in plaintiff's position, and that the harm was in fact sustained, it becomes a question for the jury whether that increased risk was a substantial factor in producing the harm. *Hamil v. Bashline*, 392 A.2d at 1286. See also *Feeney v. Disston Manor Pers. Care Home, Inc.*, 849 A.2d 590, 595 (Pa. Super. 2004). The Pennsylvania Supreme Court has held:

> Proximate cause is a term of art, and may be established by evidence that a defendant's negligent act or failure to act was a substantial factor in bringing about the harm inflicted upon a plaintiff. Pennsylvania law has long recognized that this substantial factor need not be. . . the only factor. . . .

*Jones v. Montefiore Hospital*, 431 A.2d at 923.

There is also a question of whether the damages caused by Emery's alleged misconduct are too speculative. The test of whether damages are remote or speculative has nothing to do

with the difficulty in calculating the amount, but instead asks the more basic question of whether there are identifiable damages. *Boyer v. Walker*, 714 A.2d 458, 462 (Pa. Super. 1998). Damages are speculative only if the uncertainty concerns the fact of damages rather than the amount. *Id.* Moreover, under Pennsylvania law, damages need not be proved with mathematical certainty, but only with reasonable certainty, and evidence of damages may consist of probabilities and inferences. *Delahanty v. First Pa. Bank, N.A.*, 464 A.2d 1243, 1257 (Pa. Super. 1983) (citing *E.C. Ernst, Inc. v. Koppers Co., Inc.*, 626 F.2d 324 (3rd Cir. 1980)). The law requires that a "claim for damages . . . be supported by a reasonable basis for calculation; mere guess or speculation is not enough." *Stevenson v. Economy Bank of Ambridge*, 197 A.2d 721, 727 (Pa. 1964). "If the facts afford a reasonably fair basis for calculating how much plaintiff's entitled to, such evidence cannot be regarded as legally insufficient to support a claim for compensation." *Kaczkowski v. Bolubasz*, 421 A.2d 1027, 1030 (Pa. 1980) (quoting *Western Show Co., Inc. v. Mix*, 162 A. 667 (Pa. 1932).

The Court, therefore, is unable to find as a matter of law that AMCO has failed to establish a cause of action in negligence against Emery.

    C.    <u>Breach of Contract and Breach of Warranty</u>

AMCO has agreed to relinquish its claims of breach of contract and breach of warranty against all of the Defendants.

    D.    <u>Ownership of Subject Hotel</u>

Defendants argue that Midmark Star Properties, Inc. ("Midmark") and not Star Hotels, Inc. was the actual owner of the hotel at issue, and seek dismissal of all of AMCO's claims. Based upon AMCO's response, the Court finds that the failure to include Midmark as a subrogor

in the Complaint was an error, but was not prejudicial to the Defendants. The Court will grant AMCO leave to amend the complaint to make the appropriate corrections.

      E.      Statute of Repose

Because the Court finds that there is a question of fact regarding Emery's violation of the FPA and BOCA with regard to draftstopping and the failure to use FRT wood in constructing the hotel, Emery's request for judgment as a matter of law based upon Pennsylvania's Statute of Repose must be denied.

## V. CONCLUSION

Based upon the foregoing, the motion for summary judgment filed on behalf of the Kratsa Defendants shall be granted. The motion for summary judgment filed on behalf of Emery shall be granted in part and denied in part. The motion is granted with regard to AMCO's breach of contract and breach of warranty claims, and is granted with regard to AMCO's negligence claims based upon the installation of the bathroom fan/light fixtures set forth at Paragraphs 21(b), (c), (d) and (i) of the Complaint. Emery's motion is denied in all other aspects. An appropriate Order follows.

                                                  s/ David Stewart Cercone
                                                  David Stewart Cercone
                                                  United States District Judge

cc:     Steven L. Smith, Esquire
         Kyle T. McGee, Esquire
         Robert A. Arcovio, Esquire
         Paul T. Grater, Esquire
         (*Via Electronic Mail*)